UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| AARON HARRIS,<br><br>            Plaintiff,<br><br>    v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK,<br><br>            Defendant. | CASE NO. C18-134 BHS<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR MISTRIAL |

This matter comes before the Court on Defendant National Railroad Passenger Corporation d/b/a Amtrak's ("Amtrak") motion for a mistrial.

During discovery, Dr. Richard Seroussi ("Seroussi") produced a report on Plaintiff Aaron Harris's ("Harris") tramatic brain injury, left thoracic injury, and left shoulder injury. In relevant part, Seroussi "defer[red] giving a long-term prognosis for [Harris's] traumatic brain injury." Seroussi also opined that Harris probably had more serious injuries to his chest and shoulder than could be diagnosed with clinical evaluation at that time. He recommended Harris obtain additional, more in-depth tests and evaluation to monitor his progress with the diagnosed injuries.

ORDER - 1

1       On September 5, 2019, Harris called Seroussi to opine on the diagnosis and

2  treatment of Harris's injuries.  In relevant part, Seroussi testified as follows:

3           Q: What about his abilities to be a supervisor or his own business, any of those sort of things?
4           A: At this time, I do not see that to be probable.
            Q: Do you expect there to be some improvement ten years from now
5       that will make it probable?
            A: I would say more probably than not, no. We are almost two years
6       into this. He has not made any significant improvement in the last year.
            ***
7           Q: Under the conclusions [in Dr. Seroussi's original report] that you
        had . . . do you have an evaluation, more likely than not, as to whether or
8       not his injuries are permanent from the TBI and limiting?
            A: I don't know if I could have said that at the time of this [original
9       October 2018] report. I think subsequently, he's not improving.
            [Objection sustained]
10          Q: Does he have a permanent injury?
            A: Yes.
11          ***
            A: . . . . He's finally getting up to about 30 to 35 hours a week of
12      work. It is nothing like the work he did before. Minimum wage type of
        work now. He was a manager at a clinic or at an enterprise in Seattle and
13      was on his way to really going somewhere with a sprouting career. I don't
        want to say that is never going to happen. If you are asking me more
14      probably than not –
            Q: I am going to, yes, sir.
15          A: It is not going to happen.
            Q: Why?
16          A: Because these are permanent injuries, I think, at this time. We are
        over a year and a half into this. Sometimes you can get a sense if someone
17      will still improve if you take a snapshot of how they looked a year ago and
        then how do they look now. He's not improving. Certainly not improving
18      cognitively, emotionally.
            ***
19          Q: . . . . Guess what? I am going to ask you that. It is not just his
        concerns. I want to know your concerns, given your area of specialty and
20      background all the way across, including your biomechanical background;
        tell us what your concerns are?
21          A: My concerns are that this is really not going to improve. He will
        continue to compensate. He will continue to adjust his life . . . . They are
22      here to stay.

ORDER - 2

> \*\*\*
> Q: Is that something that either you have talked to Aaron about or did Aaron talk to you about it?
> A: What I have talked to Aaron about is what are his concerns . . . . His bigger concern, and he can speak to this himself, is the cognitive. It is the ability to feel like he has a future, that he can feel proud of what he used to – you know, what he's doing with his life, what his goals were . . . For want of a better word—not to be cute—it has been derailed, for want of a better word. I don't know if it is ever going to come back. I think more probably than not, it won't.
> \*\*\*
> A: . . . . Now, I think—he knows better than I do. He is working as kind of a front desk man at a PT clinic with no benefits. I think at a fraction of that salary. This is after quite a bit of time where he could not even get – I mean, when I evaluated him a year ago, he was only working a few days a week. This is not a young man that doesn't want to work. This is a young man that had a lot of ambition who is bumping against the real barrier brought by his head injury.
> Q: Part of that barrier is going to affect his work abilities, work choices and work future, correct?
> A: Yes.

On cross examination, Amtrak asked Seroussi when he evaluated Harris as follows:

> Q: You met with Mr. Harris and you have examined him, correct?
> A: Yes.
> Q: That was in August of 2018?
> A: I actually evaluated him also three days ago.
> Q: Before this trial?
> A: Yeah, on Labor Day.

Amtrak objected on the basis that it did not receive a report of the most recent examination. After a brief discussion, Amtrak moved on to another subject with the understanding that the issue would be addressed at the next break in trial. Amtrak finished cross before the next break. Harris then started redirect. In relevant part, Seroussi testified as follows:

ORDER - 3

1        A: . . . . I wrote this report on this young man in August of last year. I said 'He might still improve.' He said he thought he was improving
2    recently. He has not improved since that time. To the extent that I thought it was more probably than not permanent then, I feel much more probably
3    than not that it is permanent.

4    At this point Amtrak objected and moved to strike the testimony arguing that the

5    opinion was not properly disclosed. The Court excused the jury and heard argument of

6    counsel. As part of that argument, both counsel and the Court asked Seroussi questions

7    about his opinions as follows:

8        A: In my deposition, I said, "Ideally, I would want to see the patient one more time." It is mostly just to cement what I think is there already. I
9    don't like to give opinions if I feel I can refine them. In this case, I don't think I have changed them significantly at all.
10       \*\*\*
    A: I was being a little bit conservative, say, look, this is a young man
11   eight months later, maybe he'll make some improvement. He has not.

12   After this testimony and argument, the Court took the afternoon recess and

13   allowed Harris an opportunity to identify support in the record for the proposition that

14   Seroussi's opinions were previously disclosed to Amtrak and were not based on his

15   examination the day before trial. When the proceeding resumed, the Court agreed with

16   Amtrak that Seroussi's testimony must be struck in some way because Seroussi testified

17   as to Harris's injuries up to trial. The Court offered Amtrak the opportunity to explore

18   whether Seroussi's opinion were based on reading other expert's opinions or whether it

19   was based on the pretrial exam of Harris. Amtrak objected arguing that there was no way

20   to unring the bell as to the most recent exam. Harris's counsel then inquired what could

21   be used to bolster Seroussi's testimony. That led to an exchange as follows:

22       THE COURT: [Seroussi] didn't do any psychological exam?

1
      [Harris's Counsel]: No.
      THE COURT: Mental exam?
2
      THE WITNESS: I did not, your Honor. I just got a history from the patient.
3
      THE COURT: Well, a current history?
      THE WITNESS: Yes.
4
      THE COURT: How he's doing?
      THE WITNESS: Yes.
5
      THE COURT: How he's doing in his cognitive abilities?
      THE WITNESS: And emotional and physical. But I didn't do any
6
physical examination, such as the mental status testing.
      THE COURT: Right.

After this exchange, the Court called a recess for the day and requested additional briefing on this issue from the parties. On September 6, 2019, the parties filed supplemental briefs. Dkts. 103, 104. Amtrak argued that mistrial is the only remedy. Dkt. 103. Harris argued that Amtrak did not timely object and that Seroussi disclosed the permanency of Harris's brain injury during discovery. Dkt. 104. Upon review of the briefs and the transcript, the Court concluded that Amtrak's objection was timely and that it could not fashion an appropriate curative or limiting instruction to cure the problem with Seroussi's testimony. The Court then informed the parties that it would recess to allow the parties an opportunity to craft an appropriate instruction and expressed its position that, for various reasons, it was in both party's interest to work out a solution instead of a mistrial. The Court also stated that, if a mistrial was declared, then a written order would follow.

After an approximately one-hour recess, Harris and Amtrak could not agree to a solution. Although a mistrial was not formally declared on the record, the Court advised

the parties that failure to reach an agreement would result in a mistrial. Thus, the Court severed the Harris case and trial proceeded with the other plaintiffs.

"Generally, when evidence is heard by the jury that is subsequently ruled inadmissible, or is applicable only to limited [parties] or in a limited manner, a cautionary instruction from the judge is sufficient to cure any prejudice to the defendant." *United States v. Escalante*, 637 F.2d 1197, 1202–03 (9th Cir. 1980). "This procedure is the preferred alternative to declaring mistrial . . . ; mistrial is appropriate only where there has been so much prejudice that an instruction is unlikely to cure it." *Id.* at 1203.

In this case, the Court found that Amtrak had suffered such prejudice that it was unlikely to be cured. Although initially it seemed to be a matter of conveying to the jury that Seroussi's testimony could not apply up to his last exam on the day before trial, the Court's further evaluation of the transcript established that Seroussi repeatedly testified regarding the current state of Harris's injuries. Harris argues that this is not error or prejudicial to Amtrak because Seroussi disclosed Harris's permanent brain injury during discovery months before trial. Dkt. 104 at 6–11. But, if Seroussi "had already reached [that] opinion before [the Labor Day] meeting," *Id.* at 9, there would be no need for the Labor Day examination. Moreover, Seroussi could have disclosed all of these facts on direct instead of remaining silent on the matter. Instead, Seroussi provided on direct that Harris had "not made any significant improvement in the last year." Seroussi did not qualify this statement as to which injury or, by stating last year, whether he meant as of the last report that Seroussi read. While this is the most blatant testimony that relied on his Labor Day exam, review of the transcript establishes numerous occasions where his

testimony reasonably conveyed an opinion as to Harris's injuries up until the point of his testimony.  Even if Seroussi did not intend to convey such opinions as to timing of his prognosis, it became apparent or at least confusing as to timing when he testified that he examined Harris the day before trial.  Thus, the Court rejects Harris's argument that Seroussi's opinion as to permanency given at this deposition solves the identified problems with the Labor Day exam.

Regarding a cure for this prejudice, the Court gave due consideration to a curative instruction and allowed the parties an opportunity to provide such an instruction.  Neither the Court nor Harris was able to fashion a cure.  Therefore, the Court severed Harris from the consolidated trial and now declares a mistrial on the Harris case as the only appropriate option.  *Escalante*, 637 F.2d at 1202–03.

Regarding the timing of the objection, Harris argues that Amtrak waived its objection by failing to timely object.  Dkt. 104 at 6 (citing *Waitek v. Dalkon Shield Claimants Tr.*, 934 F. Supp. 1068, 1082 (N.D. Iowa 1996), *aff'd*, 114 F.3d 117 (8th Cir. 1997); *McKnight By & Through Ludwig v. Johnson Controls, Inc.*, 36 F.3d 1396, 1408 (8th Cir. 1994)).  Immediately after Seroussi testified that he conducted an exam on Labor Day, Amtrak objected on the basis of not receiving a report of this examination.  The Court stated that the issue would be taken up after the break, and Amtrak agreed to move on.  Amtrak then completed cross examination stating that it had nothing further at that time.  On redirect, Harris asked Seroussi questions regarding the permanency of Harris's injury and minimizing any reliance on the Labor Day exam.  Amtrak objected on multiple occasions, and the Court finally concluded that a recess was necessary.  Trial did

1 not resume until after the Court severed the Harris case from the consolidated trial.

2 Under this factual scenario, the Court concludes that Amtrak's objection and motion for a

3 mistrial was timely.  The cases Harris cites are distinguishable on the basis that the

4 objecting party did not present the objection while the witness was still on the stand.  *See*

5 *Waitek*, 934 F. Supp. at 1082 (objection "made at the close of plaintiffs' case");

6 *McKnight*, 36 F.3d at 1408 (objection made at the conclusion of the testimony and in a

7 motion for a new trial).  Therefore, the Court concludes that Harris has failed to establish

8 that Amtrak's objection was untimely.

9     In sum, the Court **GRANTS** Amtrak's motion for a mistrial as to Harris because

10 Amtrak made a timely objection to Seroussi's undisclosed and prejudicial testimony upon

11 which the Court and Harris were unable to formulate an appropriate curative instruction.

12 All further filings regarding Harris shall be filed only in the Harris docket.  The parties

13 shall also meet and confer regarding a new trial date and submit a joint status report on

14 this issue no later than October 4, 2019.

15     **IT IS SO ORDERED**.

16     Dated this 11th day of September, 2019.

BENJAMIN H. SETTLE
United States District Judge